UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOMINIQUE D. MCMILLION,
# 939865,

        Petitioner,

                              Case Number: 2:18-CV-12573

v.                               Hon. George Caram Steeh

ERICK BALCARCEL,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS AND
<u>DENYING A CERTIFICATE OF APPEALABILITY</u>**

Petitioner Dominique McMillion, currently in the custody of the Michigan Department of Corrections, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his convictions for felony murder § 75.316(b)(1), and first-degree child abuse, Mich. Comp. Laws § 750.136b(2). He seeks relief on the grounds that insufficient evidence supports his convictions and the trial court improperly admitted prejudicial expert testimony which invaded the province of the jury. For the reasons explained below, the Court denies the petition and denies a certificate of appealability.

**I.     Background**

This case arises from the death of sixteen-month old Mariyah Crump. On August 11, 2014, Mariyah's mother, Quameisha Green, left Mariyah with Petitioner at his house in Detroit, while she walked to her mother's house.  (ECF No. 8-11, PageID.433.)  Green had been dating Petitioner for a few months and he knew Mariyah well.  (*Id.* at 434.)  About two hours later, Green learned that Mariyah had stopped breathing.  (*Id.* at 441.) Green rushed to the hospital.  (*Id.* at 443.)  Petitioner was the first person she saw when she arrived at the hospital.  (*Id.*)  Petitioner repeatedly told Green that Mariyah had choked on a ham sandwich.  (*Id.* at 444.)  Mariyah died at the hospital later that evening.  (*Id.* at 449.)  Green spoke to Petitioner again the next morning for about five minutes.  (*Id.* at 454.)  He told Green that Mariyah choked on a sandwich, threw up, started shaking and then went limp.  (*Id.*)  He did not mention anything about dropping Mariyah, her falling, or hitting her head. (*Id.*)

Dr. Kilak Kesha, Assistant Wayne County Medical Examiner, performed the autopsy.  Dr. Kesha testified that the cause of death was multiple blunt force trauma and the manner of death was homicide.  (ECF No. 8-12, PageID.543.)  The autopsy revealed multiple areas of subdural

hemorrhaging on both sides of Mariyah's head and hemorrhaging in her brain. (*Id.* at 560.) She also suffered a rib fracture and hemorrhaging in the area around her spinal cord and on the pericardial sac. (*Id.* at 577-78.) She had extensive injuries in her abdomen as well, including tearing of the liver and pancreas, and bleeding around her stomach, kidneys and diaphragm. (*Id.* at 584-85.) Dr. Kesha concluded that Mariyah's injuries were inconsistent with choking, attempts at CPR, or seizures. (*Id.* at 589.) The liver and pancreas lacerations could not have been caused by someone dropping Mariyah to the floor. (*Id.* at 591.) Dr. Kesha testified that these injuries could have been caused by multiple punches and/or kicks. (*Id.*)

Dr. Angela Mata, a pediatric ICU specialist, treated Mariyah at St. John's Children's Hospital. Mariyah was unresponsive when she arrived at the hospital. (*Id.* at 902.) Doctors were able to revive Mariyah and she was admitted to the intensive care unit. (*Id.* at 905.) Dr. Mata was told by family members that Mariyah began choking, then shaking, and then she passed out. (*Id.* at 910.) Dr. Mata testified that Mariyah's injuries were inconsistent with choking. (*Id.* at 911.)

The trial court denied Petitioner's motion for a directed verdict. The

defense did not present any witnesses.

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of first-degree felony murder and first-degree child abuse. On October 7, 2015, he was sentenced to life imprisonment for the murder conviction and 29-1/2 years to 70 years for the first-degree child abuse conviction.

The Michigan Corut of Appeals affirmed the convictions on direct appeal. *People v. McMillion*, No. 330128, 2017 WL 1033748 (Mich. Ct. App. Mar. 16, 2017). The Michigan Supreme Court denied leave to appeal. *People v. McMillion*, 501 Mich. 881 (Mich. 2017).

Petitioner then filed this habeas petition seeking relief on these claims:

> I. Petitioner's due process rights were violated when he was convicted of Felony Murder predicated on First Degree Child Abuse without sufficient evidence to prove those offenses beyond a reasonable doubt.
>
> II. The admission of inappropriate and highly prejudicial expert testimony violated petitioner's right of due process where the medical expert implicitly testified to intent and invaded the province of the jury.

## II.   Standard of Review

Review of this case is governed by the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Williams*, 529 U.S. at

413. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 102-03(internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Greene v. Fisher*, 565 U.S. 34, 38 (2011). Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court

decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Id.*

## III. Discussion

### A. Sufficiency of the Evidence

Petitioner's first claim for relief concerns the sufficiency of the evidence. He argues that the evidence was insufficient to support his conviction for first-degree child abuse, and that his first-degree felony murder conviction, consequently, was also constitutionally infirm.

Sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). On habeas review, the sufficiency of the evidence

inquiry involves "two layers of deference": one to the jury verdict, and a second to the Michigan Court of Appeals' decision. *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson,* 443 U.S. at 319) (emphasis in *Jackson*). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, the elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in the statute. *See Matthews v. Abramajtys*, 319 F.3d 780, 789 (6th Cir. 2003) (citing *People v. Carines*, 460 Mich. 750, 759, 597 N.W.2d 130 (1999)); Mich. Comp. Laws § 750.316. To prove a defendant

guilty of first-degree child abuse, the prosecution must prove that the defendant "knowingly or intentionally cause[d] serious physical or serious mental harm to a child." Mich. Comp. Laws § 750.136b(2); *People v. Gould*, 225 Mich. App. 79, 87 (1997).

The Michigan Court of Appeals held that the prosecution presented sufficient evidence to prove Petitioner's guilt:

> Before trial and throughout the proceedings, defendant claimed that the prosecutor failed to demonstrate that defendant knowingly and intentionally harmed the child. Defendant contended that his actions, albeit unskilled in trying to perform CPR on the child, demonstrated his intention to save her life rather than to cause her harm.
> The evidence showed that the child had no significant injuries or problems, other than a small bruise to one facial cheek and crying due to hunger, before being left in defendant's care. After being left with defendant, the child incurred a multitude of injuries, including hemorrhages to the brain, nerves, spinal cord, neck and pericardial sac. Bruising was evidenced on the child's left lung and heart, in addition to a fracture of the "left ninth rib." The child also suffered lacerations to the liver and pancreas, with bleeding in the abdominal area. After performing the autopsy, Dr. Kilak Kesha opined that the injuries were incurred concurrently and could not have been the result of overly forceful striking of the child's back or misapplication of CPR. Instead, the child's head injuries were caused by multiple blows, falls, or bilateral contact with a hard surface. This testimony was supported by the treating physician, Dr. Angela Mata-Angelocci, who opined that the injuries observed were not consistent with the reports of choking or seizures by the child. Medical testing confirmed the existence of bleeding in the child's brain upon admission to the hospital. Dr. Mata-Angelocci opined that the bruising which developed while the child was in the PICU did not result from extensive or inexpert application of CPR techniques or seizures. Rather, she testified that the injuries were the result of harmful actions such as shaking, throwing, kicking, or punching the child.

> Based on the type and extent of injuries incurred by the child, coupled with the opinions expressed by two experts that the injuries were the result of harmful actions and could not be the product of the behaviors or events described by defendant, we hold that the prosecution presented more than sufficient evidence for a jury to find that the intent element of first-degree child abuse was proven beyond a reasonable doubt.[1]
>
> Defendant also challenges the sufficiency of the evidence to support his felony murder conviction. He argues that because there was insufficient evidence to support his first-degree child abuse conviction, there is no underlying felony to support the felony murder conviction. *See* M.C.L. 750.316(1)(b).  However, because we have determined that there was sufficient evidence to support his first-degree child abuse conviction, this claim necessarily fails.
>
> ---
> [1] And, although there was no testimony that defendant had historically displayed any particular animus or anger toward the minor child or had engaged in harmful behaviors toward her before the events leading to the child's death, this absence or deficiency does not necessitate the reversal of defendant's conviction for first-degree child abuse.

*People v. McMillion*, No. 330128, 2017 WL 1033748, at *2 (Mich. Ct. App. Mar. 16, 2017).

Petitioner argues that the evidence failed to establish the required intent element.  He highlights portions of the trial testimony which he believes establish the lack of intent to harm.  He maintains that any harm Mariyah suffered was the result of her choking and his desperate attempts to perform CPR.  Petitioner ignores the substantial evidence incriminating him and that the jury was free to disbelieve his defense.  Considering the sheer number and severity of injuries Mariyah suffered, Petitioner's inconsistent stories, and the medical testimony that her injuries could not

have been caused by improper CPR or a fall, a reasonable jury could have concluded that Petitioner possessed the requisite intent. The evidence presented was more than sufficient to support the jury's verdict and the Michigan Court of Appeals' decision was not contrary to or an unreasonable application of Supreme Court precedent.

**B.    Expert Witness Testimony**

Petitioner's second claim concerns a portion of the medical examiner's testimony. He argues that admission of Dr. Kesha's opinion on the ultimate question of intent violated his right to due process by invading the province of the jury.[1]  Dr. Kesha was asked what he believed caused Mariyah's injuries.  (ECF No. 8-12, PageID.647.)  Dr. Kesha testified that Mariyah "was a victim of inflicted trauma."  (*Id.* at PageID.647-48.)  When asked what that meant in layman's terms, Dr. Kesha responded, "[S]he was beaten."  (*Id.* at 648.)

The Michigan Court of Appeals held that Dr. Kesha's testimony did not improperly invade the province of the jury:

---

[1]Respondent argues that this claim is procedurally defaulted.  The Court will, in the interest of judicial economy, bypass the procedural default question and proceed directly to the merits of this claim.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel [addressing the merits of a claim] if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.").

> Dr. Kesha, as the medical examiner who performed the autopsy on the child, testified regarding the myriad of wounds incurred and their timing as part of his determination of the cause of death. In describing the wounds, Dr. Kesha testified that the wounds were the result of "multiple blunt force trauma." He explained that blunt force trauma involved the use of a solid object and that the nature and extent of the injuries, particularly the rib fracture, internal bleeding and damage, were suspicious of child abuse. Dr. Kesha's testimony was relevant to the charges of first-degree child abuse and felony murder in accordance with MRE 401. When asked to explain his determination of the cause of death, Dr. Kesha opined that the child was the victim of "inflicted trauma." Asked for a "layman's" definition or explanation, Dr. Kesha responded, "She was beaten."
>
> Dr. Kesha's responses were not improper or unduly prejudicial to defendant. Dr. Kesha testified regarding the injuries revealed during the autopsy of the child and explained how the specific injuries could have incurred. This information was not only relevant, but essential to his determination of the cause of death. At no time did Dr. Kesha opine on defendant's guilt or that defendant was the source of the wounds or injuries; he properly and expertly explained how such wounds could arise and clarified the meaning of the terminology "inflicted trauma." In other words, the opinion of the medical examiner was premised on the evidence, which showed that the injuries the child suffered were neither accidental nor resulted from the application of medical procedures or preexisting conditions. Therefore, Dr. Kesha's testimony regarding the cause and manner of death fell within the scope of his expertise as the medical examiner. Further, Dr. Kesha's opinion was not improper conjecture, and it did not encompass an impermissible legal conclusion nor invade the sole province of the jury.

*People v. McMillion*, No. 330128, 2017 WL 1033748, at *3 (Mich. Ct. App.

Mar. 16, 2017).

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, Supreme Court precedent. First, to the extent that Petitioner raises this claim as a violation of state law, this claim is not cognizable on federal habeas review. *Shoemaker v. Jones*, 600 F. App'x 979, 984 (6th Cir. 2015). A federal court may grant an application for writ of habeas corpus only on the ground that the petitioner is in custody in violation of the Constitution, laws, or treaties of the United States, and not for perceived errors of state law. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Second, Petitioner fails to show a due process violation. The admission of evidence may violate the Due Process Clause (and thereby provide a basis for habeas relief) where the admission "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (2003). The Supreme Court "defined the category of infractions that violate fundamental fairness very narrowly." *Estelle*, 502 U.S. at 73 (1991). To violate due process, an evidentiary decision must "offend[ ] some principle

of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted).

The court of appeals' resolution of Petitioner's claim was not objectively unreasonable. The Court agrees with the state court's determination that Dr. Kesha did not offer an opinion on Petitioner's guilt or whether he was the source of Mariyah's injuries. Dr. Kesha testified that the injuries were caused by non-accidental trauma, and that the type and severity of the injuries was inconsistent with Petitioner's version of the events. His testimony rested on information gleaned from the autopsy and his expertise in this area. As such, Dr. Kesha's opinion did not fatally infect the trial or violate Petitioner's right to a fair trial. Petitioner fails to establish that the appellate court's determination—that admission of the expert testimony was permissible—is contrary to, or an unreasonable application of, clearly established federal law. Habeas relief is denied.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a

substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

### V. Conclusion

The petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**SO ORDERED**.

Dated: June 4, 2020

                                         s/George Caram Steeh
                                         GEORGE CARAM STEEH
                                         UNITED STATES DISTRICT JUDGE

> CERTIFICATE OF SERVICE
>
> Copies of this Order were served upon attorneys of record on June 4, 2020, by electronic and/or ordinary mail and also on Dominique D. McMillion #939865. Baraga Maximum Correctional Facility, 13924 Wadaga Road, Baraga, MI 49908.
>
> s/Brianna Sauve
> Deputy Clerk